**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **ESTATE OF WILLIAM COLT HALL,** *et al.*, | **CASE NO. 5:22-cv-113-KKC-MAS** |
|     **Plaintiffs,** | |
| **v.** | <u>**OPINION & ORDER**</u> |
| **UNITED STATES OF AMERICA,** *et al.*, | |
|     **Defendants.** | |

This matter is before the Court on motion by the Government. (R. 82.) The motion asks the Court to exclude three of Plaintiffs' expert testimonies and grant summary judgment in favor of the Government. Fully briefed, the Court will address each argument in turn.

**I. Background**

In November 2020, Plaintiff Christina Hall's twins were delivered by emergency cesarean section. Upon delivery, one of the twins, William Colt Hall, was immediately transferred to the University of Kentucky Hospital. He died two days later. William had suffered an acute brain injury resulting from myocardial infarction, injuries to his organs, and oxygen deprivation caused by cord compression. His twin brother, Waylon Hall, survived.

On May 3, 2022, Christina, Waylon, and Robert Hall, William's father, as well as William's estate (collectively, "Plaintiffs"), filed the instant action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, against the Government. Plaintiffs alleged negligence, wrongful death, vicarious liability, and loss of consortium against Ratliff and Hirst, both of whom are employed by the Government.

Plaintiffs served their initial expert disclosures on September 15, 2023. In their disclosures, Plaintiffs identified Dr. Jeffrey Phelan as their obstetric expert. Later, the Court entered a revised scheduling order which allowed additional expert disclosures.

For reasons unclear to the Court, Plaintiffs retained Dr. Roger Newman in place of Dr. Phelan. In conducting his initial review, Dr. Newman was provided with medical records, reports, and depositions. After his initial review, Dr. Newman conferred with Plaintiffs' counsel, then Plaintiffs' counsel provided Dr. Newman with Dr. Phelan's report. Dr. Newman downloaded the document into a word processor and completed his review of the case materials. Following approximately twenty-two hours reviewing case materials, he spent approximately four hours preparing and finalizing his expert report.

On September 4, 2024, Plaintiffs served their expert disclosures, disclosing Dr. Roger Newman as an expert witness. Dr. Newman's expert report closely resembles Dr. Phelan's expert report.

Plaintiffs also identified Dr. Nathan Shelman as a non-retained expert witness. The disclosure stated that Dr. Shelman is a pathologist at the University of Kentucky and included a printed copy of Dr. Shelman's profile on the University of Kentucky's website. While the disclosure did not state as much, Dr. Shelman conducted the autopsy of William Colt Hall in his capacity as a treating pathologist.

On February 26, 2025, Plaintiffs took Dr. Shelman's trial deposition. (*See* R. 98.) The Government was present and participated in the deposition.

On March 13, 2025, the Government filed the present motion for summary judgment. (R. 82.) The motion asks the Court to exclude the expert testimony of Dr. Roger Newman, Dr. Matthew Thompson, and Dr. Nathan Shelman because they fail to comply with Federal Rule of

2

Civil Procedure 26(a)(2). If this motion is granted, the Government argues, summary judgment should be granted in its favor because Plaintiffs would have no expert opinions to support its case. Additionally, the Government argues it should be granted summary judgment as to any claims made on behalf of the decedent's minor sibling because loss of sibling consortium is not a recognized claim in Kentucky.

On August 8, 2025, the Court addressed the present motion only as to Dr. Thompson's expert report. (R. 119.) The Court reopened limited discovery regarding newly-disclosed cases of Dr. Thompson, allowing the Government to depose him on those newly-disclosed cases only. The rest of the issues in the motion were deferred until Dr. Thompson was deposed and the Government had the opportunity to file a new motion to exclude Dr. Thompson's testimony.

The Government filed no such motion and the time to do so has passed. The Court will address the remaining issues in the Government' motion to exclude and for summary judgment in turn.

## II. Analysis

Federal Rule of Civil Procedure 26(a)(2) governs discovery practice related to expert witnesses. "[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). A *retained* expert witness disclosure must be accompanied by "a written report— prepared and signed by the witness[.]" *Id* at 26(a)(2)(B). On the other hand, a *non-retained* expert witness disclosure must state the following.

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

3

## A. Dr. Newman's Expert Report

The Government argues that Dr. Newman's expert report should be excluded for failure to comply with Rule 26(a)(2)(B). Specifically, it asserts that Dr. Newman did not prepare his own report, as evidenced by its similarity to Dr. Phelan's report. Plaintiffs disagree and argue that, because the report reflects the testimony to be given by Dr. Newman, it complied with Rule 26(a)(2)(B).

An expert may receive assistance from counsel while preparing his Rule 26(a)(2)(B) report. Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment. "Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness." *Id*. Courts within the Sixth Circuit have held that Rule 26(a)(2)(B) requires an expert to "substantially participate in the preparation of his report." *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 578 (W.D. Tenn. Mar. 5, 2009); *see James T. Scatuorcio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 5:11-374-DCR, 2014 WL 1744848, at *6 (E.D. Ky. Apr. 30, 2014) ("'Preparation' means involvement in the creation.") (internal citation omitted); *Huddleston v. Springfield Health Servs., LLC*, 2025 U.S. Dist. LEXIS 4511, at *11-13 (M.D. Tenn. Jan. 8, 2025) (finding no Rule 26 violation when three expert reports shared identical factual summaries and overlapping opinions because there was no evidence the experts failed to form their own opinions or merely signed reports crafted by counsel).

In *Scatuorcio*, approximately 90% of an expert's report was prepared by counsel after the two had a sixty-to-ninety-minute meeting. The expert was unable to identify his contributions to the report and had not reviewed the underlying records cited in the report. The Court concluded that the expert had not substantially participated in the creation of his report.

4

Here, Dr. Newman spent 8.5 hours reviewing the complaint, Dr. Thompson's expert report, and Christina Hall's medical records. (R. 88-3 at 44.) Then, he participated in a 45-minute discussion with Plaintiffs' counsel. (*See id*. at 1-2, 44.) Following the discussion, Plaintiffs' counsel provided Dr. Newman a copy of Dr. Phelan's prior report. Dr. Newman reviewed depositions and other materials, including Dr. Phelan's report.

Dr. Newman downloaded Dr. Phelan's report into a word processor and "made changes to it as [he] felt were appropriate." (R. 82-2, at 94.) To verify the facts and conclusions set forth in the report, he also re-reviewed the records "to confirm what was said and make sure [he] agreed with [Dr. Phelan's report] or change it if [he] didn't." (*Id*. at 93-94; *see also* R. 88-3 at 44.) Dr. Newman conducted 17.5 hours of additional review of depositions, reports, and records before completing his expert opinion. (R. 88-3 at 2, 44.) Based on this review, Dr. Newman edited, verified, and modified Dr. Phelan's report to reflect his own conclusions. (*See* R. 82-2 at 94, 97, 100.)

In short, Dr. Newman reviewed the record, including the prior report provided to him, and made changes to the report as he saw fit. Accordingly, this report "reflects the testimony to be given by the witness." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 1993 amendment; *see* R. 82-2 at 94. Although the preliminary components of Dr. Newman's report are similar to Dr. Phelan's report, the Court finds that Dr. Newman substantially participated in the preparation of his report.

Accordingly, the Court finds that Dr. Newman's opinion should not be excluded for failure to comply with Rule 26(a)(2)(B). This is a subject for cross-examination rather than exclusion.

## B. Dr. Shelman's Expert Report

### 1. Federal Rule of Civil Procedure 26(a)(2)(C)

Dr. Nathan Shelman conducted the autopsy of William Colt Hall in his capacity as a treating pathologist. Plaintiffs later identified Dr. Shelman as a non-retained expert witness. (*See* R. 82-1 at 2, 259-60.) The Government argues that Dr. Shelman's expert opinion should be excluded for failure to comply with Rule 26(a)(2)(C). Specifically, it asserts that Plaintiffs did not provide the required description of "the topics of Dr. Shelman's testimony or any opinions he would render, beyond the notation that he is a pathologist at UK and that his profile appears on the University's website." (R. 82 at 10 (citing R. 82-1 at 2, 259-60.)

Plaintiffs argue that they sent a copy of Dr. Shelman's autopsy report on October 26, 2021. (R. 88 at 12.) The Government does not dispute that they received it. Because the autopsy report contains a summary of Dr. Shelman's factual findings and medical conclusions, Plaintiffs argue, they satisfied Rule 26(a)(2)(C).

Non-retained expert witness disclosures are "considerably less extensive" than the reports required from retained expert witnesses. Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

> [A] summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and the opinions must state a view of judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient. Further, . . . a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert relied in forming his or her own opinions—that states the main points

derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice.

*Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 146 (E.D. Mich. 2020) (quoting *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2015 WL 1105840, at *9 (S.D. Ohio Mar. 11, 2015). In *Dobbins*, the court found that "Plaintiff's assertion that the physicians will testify to the injuries sustained in the accident and to the treatment plan for those injuries is insufficient because it does not provide a summary of the facts and opinions to which the witnesses are expected to testify." *Id*.

Here, Plaintiffs' disclosure provided even less information. The disclosure shows only that Dr. Shelman is a pathologist at the University of Kentucky. Plaintiffs failed to describe the topics of Dr. Shelman's testimony or any opinions that he would render. Plaintiffs did not satisfy the requirements set forth in Rule 26(a)(2)(C).

Plaintiffs argue that Dr. Shelman's autopsy report, which Plaintiffs provided at the outset of the case, "contains a clear, detailed summary of his factual findings and medical conclusions[.]" (R. 88 at 13.) While this may be true, the autopsy report was not included in the expert disclosure and, thus, does not satisfy the Rule 26(a)(2)(C) disclosure requirements.

### 2. Federal Rule of Civil Procedure 37(c)(1)

When the disclosure requirements of Rule 26 are violated, Rule 37(c)(1) requires that the violating party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Excluding an expert witness is a "drastic" sanction. *See Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997).

The Sixth Circuit applies five factors to assess whether exclusion is warranted:

7

(1) The surprise to the party against whom the evidence would be offered;

(2) The ability of that party to cure the surprise;

(3) The extent to which allowing the evidence would disrupt the trial;

(4) The importance of the evidence; and

(5) The nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). "The burden of proof is on the potentially sanctioned party to prove harmlessness or justification." *Riley v. NewPenn Kilt, LLC*, 5:18-14, 2020 WL 417784, at *4 (W.D. Ky. Jan. 27, 2020) (citations omitted).

The first two factors weigh against exclusion. There would be little-to-no surprise to the Government as to the evidence Dr. Shelman would provide, because the Government has possessed Dr. Shelman's autopsy report since the outset of the case. Plaintiffs assure the Court that "Dr. Shelman's testimony is based solely on the findings and conclusions he formed contemporaneously with that autopsy." (R. 88 at 12.) Additionally, "Plaintiffs deposed Dr. Shelman in February 2025 and Defendant had a full opportunity to question him on the very opinions he formed during his autopsy." (*Id.* at 13.) Because the autopsy report is in the Government's possession, and both parties relied on the same report when taking Dr. Shelman's deposition testimony, any surprise to the Government regarding Dr. Shelman's testimony seems unlikely.

As to the third factor, Plaintiffs' late disclosure would not disrupt the trial schedule because the pretrial conference and the trial, itself, has not commenced.

The last two factors also do not support excluding the witness. Dr. Shelman's testimony is important because he performed the autopsy of the individual whose death is central to this case.

Plaintiffs explain that their failure to disclose the information required by Rule 26 was "a technical oversight, not a strategic maneuver." (*Id.* at 14.) Specifically, Plaintiffs explain the following.

> Defendant possessed the autopsy report for years and had the opportunity to question Dr. Shelman based on its contents . . . . While Plaintiffs initially understood that the United States would notice Dr. Shelman's deposition, the United States ultimately declined to do so after Plaintiffs advised that he was not a retained expert. Plaintiffs then re-noticed the deposition but did not communicate with Dr. Shelman outside the formal deposition setting . . . . As a result, Plaintiffs and Defendant were on equal footing because both were relying solely on the content of the pathology report when taking the deposition testimony to understand and address his opinions in this case.

(*Id.*) Plaintiffs have attempted to cure their mistake by pointing the Government to the summary included in Dr. Shelman's autopsy report. But even that was available to the Government at the time of the deposition. It appears this is a foul with no real harm.

Accordingly, Plaintiffs' violation of Rule 26 was harmless and does not justify exclusion. The Court will not exclude Dr. Shelman's expert opinion.

### C. Sibling Loss of Consortium Claim

Finally, the Government argues that Kentucky law does not recognize a claim for loss of consortium made by a sibling and, therefore, summary judgment should be granted as to any claim made by the decedent's twin brother, Waylon Hall.

In Kentucky, in an action for wrongful death of a minor, the relevant statute states that "the surviving parent, or parents, may recover for loss of affection and companionship that would have been derived from such child during its minority, in addition to all other elements of the damage usually recoverable in a wrongful death action." KRS 411.135. Importantly, the statutory language does not mention a cause of action for siblings.

9

The Plaintiffs have filed a separate state court action against Saint Joseph Health System and Saint Joseph Mount Sterling (collectively, "Saint Joseph"). (*See* R. 88-5.) There, Montgomery Circuit Court denied Saint Joseph's motion for judgment on the pleadings as it related to Waylon Hall's loss of consortium claim because "[l]oss of sibling consortium has not been addressed by Kentucky Appellate Courts; therefore, guidance on the issue is necessary to inform the public and assist Trial Courts." (R. 88-5 (Copy of *Estate of William Colt Hall v. Saint Joseph Health System, Inc.*, 21-CI-90189 (Montgomery Cir. Ct., Feb. 15, 2022))). Accordingly, the state court allowed the loss of sibling consortium claim to proceed. (*Id.*)

Plaintiffs argue that, because the state court allowed Waylon Hall's claim to proceed, this Court should, too. As the Government points out, however, the state court's holding only indicates that it declined to grant judgment on the pleadings with respect to the sibling loss of consortium claim. This does not sufficiently persuade the Court to deny summary judgment here.

"Courts applying the FTCA look to the substantive tort law of the state in which the cause of action arose to determine liability and damages." *Huddleston v. United States*, 485 F. App'x 744, 745 (6th Cir. 2012) (citing *Ward v. United States*, 838 F.2d 182, 184 (6th Cir.1988)). While the Kentucky Supreme Court has recognized claims by a minor child for loss of *parental* consortium, it did so because the child's claim was "reciprocal of the claim of the parents for loss of a child's consortium" and implicated the public policy of parental protection and care for their children. *See Giuliani v. Guiler*, 951 S.W.2d 318, 321 (Ky. 1997). The Kentucky Court of Appeals has declined to extend loss of consortium to a sibling. *Shemwell v. Thompson*, 2023-CA-21-MR, 2024 WL 56922 (Ky. Ct. App. Jan. 5, 2024), *review denied* (Aug. 16, 2024).

Because Kentucky law does not recognize a cause of action for loss of consortium made by a sibling, it is not an appropriate claim in a Kentucky-based Federal Tort Claims Act case.

Accordingly, summary judgment as to the loss of sibling consortium claim will be granted and Waylon Hall's loss of consortium claim will be dismissed.

### III. Conclusion

For the aforementioned reasons, the Court hereby ORDERS that the Government's Motion for Summary Judgment and to Exclude Expert Testimony (R. 82) is GRANTED in part and DENIED in part as follows.

(1) The motion is GRANTED as to the loss of consortium claim and is DENIED as to all other arguments.

(2) Waylon Hall's loss of consortium claim is DISMISSED.

This 25th day of March, 2026.

**Signed By:**

_**Karen K. Caldwell**_

**United States District Judge**